# STATE OF MICHIGAN

# COURT OF APPEALS

---

*In re* SCHWEIN Estate.

---

SANDY MEAD, Personal Representative for the
Estate of DAVID SCHWEIN

Petitioner-Appellee,

v

KEVIN BARTON, TERRI ANDERSON, and
MEREDITH BARTON,

Respondents-Appellants.

FOR PUBLICATION
January 12, 2016
9:00 a.m.

No. 324305
Ingham Probate Court
LC No. 13-002609-DE

---

Before: RONAYNE KRAUSE, P.J., and GADOLA and O'BRIEN, JJ.

GADOLA, J.

This case implicates the procedural requirements under the Estates and Protected Individuals Code (EPIC), MCL 700.1101 *et seq.*, and the Michigan Court Rules, for a personal representative to assert a claim arising before the decedent's death against the estate. Respondents appeal as of right the probate court's opinion and order concluding that (1) Sandy Mead's claim against the estate for reimbursement of attendant care services she provided to decedent before his death was not barred by MCL 700.3803(1), MCL 700.3804(3), or MCR 5.307(D), (2) Mead overcame the presumption that she provided the services gratuitously, and (3) the six-year statute of limitations governing contract claims did not bar her claim. For the reasons below, we reverse and remand for further proceedings consistent with this opinion.

## I. BASIC FACTS AND PROCEDURAL HISTORY

Decedent, David Lee Schwein, died on September 10, 2013. Decedent's heirs were his four daughters, Sandy Mead, Barbara Whatley, Donna Rogers, and Terri Anderson, and the three children, Meredith Barton, Kevin Barton, and Philip Barton, of his predeceased daughter, Gail Barton. After decedent's death, Mead filed a petition asking the court to appoint her as personal representative of the estate. The probate court granted Mead's request and issued letters of authority on September 27, 2013. On October 15, 2013, Mead published a notice to creditors in the Lansing State Journal.

-1-

On July 31, 2014, Mead filed a petition asking the court to allow a claim and to grant her authority to distribute the estate's assets, which totaled $1,043,355.56. In her petition, Mead alleged that in 1980, decedent was catastrophically injured in a motor vehicle accident and suffered a traumatic brain injury. As a result of his injuries, decedent became wheelchair bound and eventually required 24/7 attendant care services. Mead alleged that except for limited respite assistance, she provided all of decedent's attendant care services between August 1, 1998 and September 10, 2013. According to Mead, on April 30, 2013, decedent initiated a lawsuit against State Farm Mutual Automobile Insurance Company (State Farm), seeking payment of personal protection insurance (PIP) benefits to reimburse Mead for her services. Mead explained that after decedent's death, the estate settled decedent's claims against State Farm for $962,530. Mead alleged that she was owed $1.5 million for the attendant care services she provided over a 15-year period, and as the only remaining creditor of the estate, she was entitled to priority distribution over decedent's other heirs. Mead asked the court to approve a distribution of the settlement award, granting her $608,711.47 for the services she provided and granting the law firm Molosky & Co. $353,818.53 for representing decedent and the estate in the State Farm action.

Respondents objected to Mead's petition, arguing that Mead's claim against the estate was barred because she failed to comply with the timing requirements of MCL 700.3803(1), MCL 700.3804(3), and MCR 5.307(D) for presenting a claim against the estate. Respondents also argued that Mead failed to overcome the presumption that she provided the attendant care services gratuitously, she failed to present evidence that she was owed $1.5 million for the services rendered, and her claim was partially barred by the six-year statute of limitations governing contract claims.[1]

---

[1] Respondents attached a copy of decedent's complaint in the State Farm action to their objection, which included two counts against State Farm: one for breach of contract and one for violation of the Michigan Consumer Protection Act, MCL 445.901 *et seq*. Under the breach of contract claim, decedent alleged that State Farm failed to pay benefits to which he was entitled under his no-fault insurance policy, including, but not limited to, the following:

> a. All reasonable charges for reasonably necessary products, services, and accommodations for his care, recovery, and/or rehabilitation;
>
> b. Reasonably necessary attendant care services . . . ;
>
> c. Reasonably necessary nursing care services performed by family members and friends . . . ;
>
> d. Reasonably necessary transportation benefits . . . ;
>
> e. Reasonably necessary . . . modifications to his residence;
>
> f. Other personal protection benefits in accordance with the applicable No Fault provisions, including but not limited to, mechanisms of assistance;

Mead replied that her claim was timely because she provided notice to the interested persons within seven days of the settlement award becoming an asset of the estate. She contended that the entire $962,530 settlement award was intended to cover her attendant care services, which State Farm would not have agreed to pay if there was any plausible defense that she provided the services gratuitously. Finally, Mead argued that the six-year statute of limitations governing contract claims did not apply because she was asserting a claim to recover statutory PIP benefits, rather than asserting a claim for breach of contract.

Respondents replied that in the State Farm action, the United States District Court for the Eastern District of Michigan held that decedent was precluded from seeking statutory PIP benefits from before April 29, 2012, under the one-year-back rule.[2] In light of the federal court's ruling, respondents argued that Mead should be estopped from seeking payment for any services she provided before April 29, 2012. They further argued that Mead admitted in her deposition that State Farm paid for decedent's 24/7 attendant care services between February 2012 and decedent's death in 2013. Respondents argued that Mead had no evidence that the State Farm settlement award was only intended to reimburse Mead for the attendant care services she provided because the federal court also allowed decedent to pursue a claim against State Farm for its potential violations of the Michigan Consumer Protection Act, MCL 445.901 *et seq.*, occurring between July 31, 1998 and March 28, 2001.

Respondents attached a copy of Mead's deposition to their reply, in which Mead stated that she began caring for decedent in 1998 when her mother died, but she worked full-time at other employment between 2000 and 2012. Mead explained that decedent had two in-home caregivers who assisted him several hours each day while she was at work. Mead testified that decedent began paying her some money for her services in 2006, but they first talked about formal payment in 2011 when she and decedent discovered that State Farm should have been paying for more attendant care services. Mead admitted that she never had a contract with decedent, and she did not keep a log of any hours worked until February 2012 when State Farm began paying for 24/7 attendant care.

After considering the parties' arguments, the probate court issued an opinion and order on Mead's petition. The probate court first determined that Mead's claim was not barred by the court rules or the statutory time limits governing the presentation of claims against an estate. The court found that Mead's claim was not a "claim of the personal representative" because she provided the services "before her official appointment as personal representative." Rather, the court characterized her claim as a known creditor's claim against the estate. The court concluded that because Mead did not send herself written notice as a known creditor, which was required under MCL 700.3801(1) and (2), the time period for filing her claim had not expired.

---

       g. Case management services and appropriate or applicable therapies;

       h. Interest on overdue benefits payments.

[2] See MCL 500.3145 (stating that a claimant in an action to recover PIP benefits "may not recover benefits for any portion of the loss incurred more than 1 year before the date on which the action was commenced.").

Regarding the presumption of gratuity, the court acknowledged that Mead was decedent's daughter, so the presumption was that she provided the services gratuitously. However, the court found that "[t]he services rendered reached far beyond 'household services' and included services typically performed by someone with at a minimum, nurse training and/or experience." The court stated that decedent's other caregivers were paid, and it appeared that "decedent brought his claim against State Farm to recover benefits he believed he was entitled to, and with the proceeds it is also reasonable to believe that he intended on paying whoever provided those attendant care services," apparently referring to Mead. The court concluded that Mead overcame the presumption of gratuity and found that an implied contract in fact existed between Mead and decedent. Finally, the court held that the six-year statute of limitations governing contract claims did not bar Mead's claim because the implied contract was a contract of continuous performance. Accordingly, the trial court allowed Mead's claim and granted her request to distribute the assets of the estate.

## II. STANDARD OF REVIEW

We review legal questions involving the proper interpretation and application of a statute de novo. *Peterson v Magna Corp*, 484 Mich 300, 306; 773 NW2d 564 (2009). Appellate courts presume that the Legislature intended the meaning expressed by the plain, unambiguous language of a statute. *Id.* at 307. When interpreting statutes, courts should give effect to every phrase, clause, and word included. *Id.* "If the statutory language is certain and unambiguous, judicial construction is neither required nor permitted, and courts must apply the statute as written." *Id.* Court rules are subject to the same rules of construction as statutes. *In re Leete Estate*, 290 Mich App 647, 655; 803 NW2d 889 (2010).

## III. CLAIMS BY A PERSONAL REPRESENTATIVE AGAINST THE ESTATE

Respondents first argue that the probate court erred by concluding that Mead's claim was not barred by the timing requirements set forth in EPIC and the Michigan Court Rules. We agree.

Under Michigan law, a personal representative of an estate is not precluded by his or her official status from being a creditor of the deceased or asserting a claim against the estate. See *Eagen v Brainard*, 231 Mich 481, 482-484; 204 NW 98 (1925). However, a personal representative owes a fiduciary duty to the heirs of the estate. MCL 700.3703(1). "A fiduciary stands in a position of confidence and trust with respect to each heir, devisee, beneficiary, protected individual, or ward for whom the person is a fiduciary." MCL 700.1212(1). A personal representative may not take advantage of his or her office to procure unfair advantage or influence because of the fiduciary relationship between a personal representative and the decedent's heirs. See *De Coo v Woodworth*, 96 Mich 362, 366; 55 NW 987 (1893); see generally *In re Baldwin Trust*, 274 Mich App 387, 401; 733 NW2d 419 (2007).

Several different statutory provisions in EPIC are relevant to resolving the issues presented in this case. MCL 700.3801 governs the responsibility of a personal representative to provide creditors with notice of the opportunity to present a claim against the estate, and provides in pertinent part the following:

-4-

(1) Unless notice has already been given, upon appointment a personal representative shall publish . . . a notice as provided by supreme court rule notifying estate creditors to present their claims within 4 months after the date of the notice's publication or be forever barred. A personal representative who has published notice shall also send, within the time prescribed in subsection (2), a copy of the notice or a similar notice to each estate creditor whom the personal representative knows at the time of publication or during the 4 months following publication . . . . For purposes of this section, the personal representative knows a creditor of the decedent if the personal representative has actual notice of the creditor or the creditor's existence is reasonably ascertainable by the personal representative based on an investigation of the decedent's available records for the 2 years immediately preceding death and mail following death.

(2) Notice to a known creditor of the estate shall be given within the following time limits:

(a) Within 4 months after the date of the publication of notice to creditors.

(b) If the personal representative first knows of an estate creditor less than 28 days before the expiration of the time limit in subdivision (a), within 28 days after the personal representative first knows of the creditor.

Once a personal representative provides notice to creditors of an estate under MCL 700.3801, MCL 700.3803(1) governs the time limits in which a creditor must present a claim which arose before the decedent's death in order to prevent the claim from being barred. The statute states the following:

(1) A claim against a decedent's estate that arose before the decedent's death . . . is barred against the estate, the personal representative, the decedent's heirs and devisees, and nonprobate transferees of the decedent unless presented within 1 of the following time limits:

(a) If notice is given in compliance with section 3801 . . . within 4 months after the date of the publication of notice to creditors . . . .

(b) For a creditor known to the personal representative at the time of publication or during the 4 months following publication, within 1 month after the subsequent sending of notice or 4 months after the date of the publication of notice to creditors, whichever is later.

(c) If the notice requirements of section 3801 . . . have not been met, within 3 years after the decedent's death.

MCL 700.3804 governs how a creditor must present a claim, and provides the following:

(1) A claimant must present a claim against a decedent's estate in either of the following ways:

(a) By delivering or mailing a written statement to the personal representative indicating the claim's basis, the claimant's name and address, and the amount claimed, or by filing with the court a written statement of the claim in the form prescribed by supreme court rule and delivering or mailing a copy of the statement to the personal representative. The claim shall be considered presented on receipt of the claim statement by the personal representative or the filing of the claim statement with the court, whichever occurs first. . . .

(b) By commencing a proceeding to obtain payment of a claim against the estate in a court in which the personal representative may be subjected to jurisdiction. The commencement of the proceeding shall occur within the time limit for presenting the claim. The presentation of a claim is not required in regard to a matter claimed in a proceeding against the decedent that is pending at the time of death.

* * *

(3) A claim by the personal representative against the estate shall be in the form prescribed by supreme court rule. The personal representative must give a copy of the claim to all interested persons not later than 7 days after the time for the claim's original presentation expires. The claim must contain a warning that the personal representative's claim will be allowed unless a notice of objection is delivered or mailed to the personal representative within 63 days after the time for the claim's original presentation expires. This subsection does not apply to a claim for compensation for services rendered or for reimbursement of expenses advanced by the personal representative.

Finally, MCR 5.307(D) provides, "A claim by a personal representative against the estate for an obligation that arose before the death of the decedent shall only be allowed in a formal proceeding by order of the court."

On appeal, respondents argue that the notice requirements of MCL 700.3801 do not apply to Mead because, as the personal representative, she had actual notice of the opportunity to file a claim against the estate. They argue that the time period for presenting her claim should have begun when she published the notice to general creditors, such that she had four months to present her claim after October 15, 2013. See MCL 700.3803(1)(a). In contrast, Mead argues that she was a "known creditor" to herself as the personal representative, and because she did not "send" herself notice in compliance with MCL 700.3801(1), she had three years to assert her claim against the estate under MCL 700.3803(1)(c). There is no dispute that Mead had actual knowledge of the notice because she posted the notice to general creditors in the Lansing State Journal on October 15, 2013. Rather, the question is whether EPIC requires a personal representative to formally "send" herself notice in order to trigger the time limits for presenting a claim against the estate.

MCL 700.3801 does not specifically address when the time period begins to run for presentation of a claim by a personal representative against the estate. EPIC clearly contemplates that there is *some* applicable time period because MCL 700.3804(3) states that a personal representative "must give a copy of the claim to all interested persons not later than 7

days *after the time for the claim's original presentation expires.*" (Emphasis added.) It is also clear that in EPIC, the Legislature imposed specific obligations on personal representatives to faithfully execute their duties for the benefit of the estate's successors,[3] and imposed liability and damages when a personal representative fails to perform her duties on behalf of the estate.[4]

Below, the probate court ruled that Mead was a "known creditor" for purposes of MCL 700.3801(1) because she was aware of the existence of her claim. The court concluded that because Mead did not send herself a copy of the notice to creditors, MCL 700.3803(1)(c) provided that she had three years to present her contract claim against the estate. Under the probate court's interpretation of MCL 700.3801(1), however, Mead would derive a benefit, i.e., having three years to present her claim against the estate under MCL 700.3803(1)(c) rather than four months under MCL 700.3803(1)(a) or (b), as a result of her own failure to provide proper notice to herself as a "known creditor." Further, in order to provide proper notice under the probate court's interpretation, Mead would be required to mail or personally serve herself with a copy of the notice that she drafted and then published as a general notice to creditors of the estate. See MCR 5.208(B)(1) ("Within the time limits prescribed by law, the personal representative must cause a copy of the published notice or a similar notice to be served personally or by mail on each creditor of the estate whose identity . . . is known to . . . the personal representative.").

Statutes should be construed to avoid absurd results. *People v Tennyson*, 487 Mich 730, 741; 790 NW2d 354 (2010).[5] We decline to adopt an interpretation of MCL 700.3801(1) that would include a personal representative within the definition of "known creditor" because the statutory definition does not plainly apply, and because such an interpretation would either require a personal representative to perform the nonsensical task of mailing or personally serving herself with a copy of the notice that she had already published, or allow a personal representative to benefit from her nonfeasance in not serving notice upon herself. Rather, considering the statutory scheme as a whole, we conclude that Mead's claim should be treated the same as every other general creditor of the estate, requiring her "to present [her] claims

---

[3] MCL 700.1212(1).

[4] See MCL 700.3712 ("If the exercise or the failure to exercise a power concerning the estate is improper, the personal representative is liable to interested persons for damage or loss resulting from the breach of fiduciary duty to the same extent as a trustee of an express trust."); see also MCL 700.1308.

[5] The absurd results rule "demonstrates a respect for the coequal Legislative Branch, which we assume would not act in an absurd way." *Public Citizen v US Dep't of Justice*, 491 US 440, 470; 109 S Ct 2558; 105 L Ed 2d 377 (1989) (KENNEDY, J., concurring). "[A] result is only absurd if it is quite impossible that the Legislature could have intended the result . . . ." *Univ of Mich Regents v Titan Ins Co*, 487 Mich 289, 346; 791 NW2d 897 (2010) (MARKMAN, J., dissenting) (quotation marks and citations omitted), overruled by *Joseph v Auto Club Ins Ass'n*, 491 Mich 200; 815 NW2d 412 (2012).

within 4 months after the date of the notice's publication or be forever barred," MCL 700.3801(1).

The probate court further concluded that Mead's claim was not "a claim of a personal representative" because her claim arose before she was issued her letters of authority, so she was not required to follow the additional procedures outlined in MCL 700.3804(3) and MCR 5.307(D) to bring her claim. Neither MCL 700.3804(3) nor MCR 5.307(D) include the phrase "a claim *of* a personal representative," but rather govern claims "*by* the [or a] personal representative against the estate," MCL 700.3804(3) (emphasis added). In this case, Mead's contract claim against the estate was a claim *by* the personal representative because Mead was the personal representative at the time she asserted her claim against the estate.

Moreover, MCR 5.307(D) states that it applies to claims "by a personal representative against the estate *for an obligation that arose before the death of the decedent*." (Emphasis added.) Under the probate court's interpretation, MCR 5.307(D) would be meaningless. There could be no such thing as a claim by a personal representative that arose before the decedent's death because the letters of authority for a personal representative are not issued until after a decedent's death. See MCL 700.3103. Likewise, the last sentence of MCL 700.3804(3) states that "[t]his subsection does not apply to a claim for compensation for services rendered or for reimbursement of expenses advanced by the personal representative." Reading this sentence in the context of the entire statutory subsection makes clear that the language is designed to exclude from its timing requirements claims by a personal representative for reimbursement of expenses advanced or services rendered in her official capacity as personal representative of the estate, while applying those requirements to claims by a personal representative that arose before the decedent's death. Therefore, the preceding language in MCL 700.3804(3) contemplates a claim by a personal representative against the estate other than a claim for services rendered or expenses advanced in the personal representative's official capacity.

In sum, the presentation period for Mead's claim was four months after the notice's publication under MCL 700.3801(1), and MCL 700.3804(3) and MCR 5.307(D) apply to Mead's claim. Mead published the notice to creditors on October 15, 2013, so the presentation period for her claim expired on February 15, 2014, and Mead was required to give a copy of her claim to all interested persons by February 22, 2014. However, she did not file her request to allow the claim until July 31, 2014, several months after the statutory presentation period had expired. The probate court erred by allowing Mead's claim because she failed to provide the interested persons with notice of the claim not later than seven days after the time for the claim's original presentation expired. Further, by treating Mead as a "known creditor," the probate court permitted her to gain an unfair advantage over other potential creditors and the other heirs of the estate by failing to carry out what would have been her own fiduciary duty as personal representative (the act of serving herself with the notice to creditors that she herself crafted and published). It is at best difficult to imagine that the Legislature intended that a personal representative who has actual notice would (1) be required to serve notice upon herself and (2) be in position to give herself up to three years to present a claim by failing to exercise a fiduciary

duty, when general creditors, some of whom might never receive actual notice, have only four months to do so.[6]

Reversed and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Michael F. Gadola
/s/ Amy Ronayne Krause
/s/ Colleen A. O'Brien

---

[6] In light of our conclusion that Mead's claim against the estate was barred under EPIC and the Michigan Court Rules, we need not address respondents' remaining arguments that Mead's claim was barred by collateral estoppel, the one-year-back rule, and the six-year statute of limitations governing contract claims, or that Mead failed to overcome the presumption of gratuity or provide adequate evidentiary support to substantiate the amount of her claim.