*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

JENNIFER WEBSTER, Personal Representative of
the ESTATE OF DESIREE CHASE,

UNPUBLISHED
March 9, 2023

Plaintiff-Appellee,

v

No. 359534
Wayne Circuit Court
LC No. 20-004689-NH

STARFISH FAMILY SERVICES, JENAI
WILLIAMS, M.S.W., ANGELA BRENZ, M.S.W.,
MARISA FARINACCI NICELY, M.S.W.,
NAIMAH ADDIE JEFFERSON, M.S.W., KIRSTEN
MACK, CHRISTINA FAY GRIM, L.L.P., DAVID
CARDINAL, JR., JESSICA BRZYS, SHIRLY
MORGAN, STACY WOODS, GLORIA GIBSON,
and SIEGLINDE LINDY HENDRICKS,

Defendants,

and

JAMES CHASE, JR.,

Appellant.

Before: RICK, P.J., and M. J. KELLY and RIORDAN, JJ.

PER CURIAM.

In this wrongful-death action, appellant appeals as of right a November 24, 2021 order regarding distribution of settlement proceeds. He argues that the trial court erred by awarding 100% of the net settlement proceeds to Jennifer Webster (in her individual capacity),[1] by

---

[1] Although Webster, as personal representative of the Estate of Desiree Chase, is plaintiff in this case, we find it appropriate to sometimes refer to Webster by her name when discussing the dispute

-1-

considering evidence that was not part of the record, in assessing the credibility of Webster and Rain Chase, and by failing to sanction Webster for her alleged breach of fiduciary duty as personal representative of the Estate of Desiree Chase. Appellant's arguments are unavailing. We affirm.

## I. FACTS AND PROCEDURAL HISTORY

This case involves a dispute over wrongful-death settlement proceeds. Desiree died on June 9, 2017, when she was 17 years old, from an overdose of diphenhydramine, more commonly known as Benadryl. Desiree had a history of psychological difficulties, including a prior suicide attempt. At the time of her death, she was residing in a temporary living facility for troubled young persons. Starfish Family Services (Starfish) operated the facility. On March 27, 2020, Desiree's mother, plaintiff Webster, as personal representative of Desiree's estate, filed this wrongful-death action against Starfish and numerous individuals who allegedly were agents or employees of Starfish. Plaintiff asserted multiple theories of liability, including general negligence as well as malpractice.

In April 2021, the parties engaged in facilitative mediation and reached a confidential settlement agreement. Plaintiff sought court approval of a proposed distribution of the settlement proceeds. Plaintiff was seeking to distribute 100% of the net settlement proceeds to Webster (after payment of legal costs and attorney fees to plaintiff's counsel).

In June 2021, Desiree's father, appellant, who had not previously been involved in the litigation, objected to plaintiff's proposed distribution of the settlement proceeds. Appellant complained that plaintiff's proposal would have distributed all of the settlement proceeds to Webster and none to appellant. He initially asked for 50% of the net settlement proceeds but later increased his request to 75% of those proceeds.

Webster and appellant conducted depositions on the proceeds issue and submitted bench briefs to the trial court. The trial court determined that Webster was entitled to 100% of the net settlement proceeds. This appeal ensued.

## II. SETTLEMENT DISTRIBUTION

Appellant first argues that the trial court erred in awarding 100% of the settlement proceeds to Webster. We disagree.

A trial court's decision regarding the distribution of wrongful-death settlement proceeds is reviewed for clear error. *Reed v Breton*, 279 Mich App 239, 241; 756 NW2d 89 (2008), citing *McTaggart v Lindsey*, 202 Mich App 612, 615-616; 509 NW2d 881 (1993). " 'A finding is clearly erroneous when, although there is evidence to support it, the reviewing court is left with a definite and firm conviction that a mistake has been made.' " *Reed*, 279 Mich App at 241-242, quoting *McTaggart*, 202 Mich App at 616. "If the reviewing court determines that the trial court made a

_____

over the settlement proceeds. At other times, when discussing the procedural history of the wrongful-death action itself, it is more appropriate to use the term "plaintiff." The different ways of referring to Webster is a function of the nature of the issue that is before this Court.

mistake, it will then substitute its own appraisal of the record and reduce damages or conditionally affirm the award." *McTaggart*, 202 Mich App at 616. Due regard is given to the trial court's special opportunity to assess credibility. MCR 2.613(C); *Hoogewerf v Kovach*, 185 Mich App 577, 579; 463 NW2d 160 (1990).

Under MCL 600.2922(1), a wrongful-death action may be brought on behalf of a person who, had death not occurred, would have been able to bring an action and recover damages. The personal representative of the decedent's estate brings the wrongful-death action on behalf of the estate and the interested parties to the estate. MCL 600.2922(2). Persons who may be entitled to damages include "[t]he deceased's spouse, children, descendants, parents, grandparents, brothers and sisters . . . ." MCL 600.2922(3)(a). "Under the Michigan wrongful death act, the trial court is required to hold a hearing and approve the distribution of the proceeds of any settlement." *Reed*, 279 Mich App at 242 (quotation marks and citations omitted). MCL 600.2922(6)(d) provides:

> (6) In every action under this section, the court or jury may award damages as the court or jury shall consider fair and equitable, under all the circumstances including reasonable medical, hospital, funeral, and burial expenses for which the estate is liable; reasonable compensation for the pain and suffering, while conscious, undergone by the deceased during the period intervening between the time of the injury and death; and damages for the loss of financial support and the loss of the society and companionship of the deceased. *The proceeds of a settlement or judgment in an action for damages for wrongful death shall be distributed as follows*:
>
> \* \* \*
>
> (d) After a hearing by the court, the court shall order payment from the proceeds of the reasonable medical, hospital, funeral, and burial expenses of the decedent for which the estate is liable. The proceeds shall not be applied to the payment of any other charges against the estate of the decedent. *The court shall then enter an order distributing the proceeds to those persons designated in subsection (3) who suffered damages and to the estate of the deceased for compensation for conscious pain and suffering, if any, in the amount as the court or jury considers fair and equitable considering the relative damages sustained by each of the persons and the estate of the deceased*. . . . [Emphasis added.]

Although MCL 600.2922 sets forth the procedure to be used in distributing settlement proceeds, the statute "provides little guidance in deciding how to arrive at a distribution that is 'fair and equitable.'" *In re Claim of Carr*, 189 Mich App 234, 238; 471 NW2d 637 (1991). "[N]o precise formula [exists] for determining damages for loss of a loved one's society and companionship." *Id*. Such determinations are for the fact-finder; this Court "will not arbitrarily substitute its judgment for that of the fact finder." *May v Grosse Pointe Park*, 122 Mich App 295, 298; 332 NW2d 411 (1982). "A claim for loss of society and companionship under the wrongful death act addresses compensation for the destruction of family relationships that results when one family member dies." *McTaggart*, 202 Mich App at 616. "The only reasonable means of measuring the actual destruction caused is to assess the type of relationship the decedent had with the claimant in terms of objective behavior as indicated by the time and activity shared and the

overall characteristics of the relationship." *Id*., citing *In re Claim of Carr*, 189 Mich App at 239. A reviewing court will "determine if there is evidence to support the distribution of the estate on the basis of the parties' relationships to the decedent." *In re Claim of Carr*, 189 Mich App at 238.

Appellant argues that the trial court clearly erred in awarding 100% of the net settlement proceeds to Webster. Consistent with his brief on appeal, at oral argument appellant argued that the trial court committed clear error in that it did not award him 75% of the proceeds.[2] We disagree.

The trial court aptly noted that, in 2005, when Desiree was at a tender age, appellant moved to Grand Rapids from the Detroit area, where Webster, Desiree, and Rain (Desiree's older sister) lived. From that point forward, Webster shouldered the primary burden of raising and nurturing Desiree. Appellant did not provide consistent financial support for Desiree and Rain until 2007. Appellant conceded that Webster did a good job raising Desiree. Although Desiree visited appellant in Grand Rapids and enjoyed some activities with him, Webster always was the primary parent in Desiree's life. Moreover, as Desiree grew older, her relationship with appellant became strained.

Appellant expressed his disapproval of Desiree's sexual orientation, and this led to a period of estrangement. In addition, Desiree experienced mental-health challenges. She cut herself and attempted suicide. Appellant repeatedly dismissed Desiree's mental-health challenges as efforts to seek attention, which led to another period of estrangement in 2017 while Desiree lived at Starfish. Webster did the necessary work in obtaining mental-health counseling for Desiree. In contrast, appellant saw Desiree once in 2017, at his uncle's funeral and the luncheon following it. Desiree and appellant did exchange Facebook messages in May 2017, and Desiree's final communication to him was a Facebook message stating that she loved him. But given our deferential standard of review, the repeated turbulence in the relationship between appellant and Desiree, and the clear, central role Webster played in Desiree's life as the primary parent, we cannot say that the trial court clearly erred in awarding 100% of the net settlement proceeds to Webster.

Appellant argues that the trial court erred by stating that Desiree expressed to one of her counselors that she feared appellant. During his deposition, appellant was asked if he was aware that, during a psychological assessment, Desiree had used the word "fear" to describe her feelings about appellant, and appellant responded, "No, I wasn't aware of that." In its ruling from the bench, the trial court in one instance stated, "Desiree's feelings about her father was [sic] expressed to one of her counselors, she stated she feared her father." In contrast, appellant argues that there is no evidence in the record substantiating that Desiree made such a statement. While appellant is correct, the trial court's remark was not central to the court's reasoning regarding the distribution of the proceeds. Thus, any error in this regard does not require reversal. *Ellison v Dep't of State*, 320 Mich App 169, 179; 906 NW2d 221 (2017), citing MCR 2.613(A). A "trial court's error is harmless if it is not decisive to the case's outcome." *Ellison*, 320 Mich App at 179; see also *In re Williams*, 333 Mich App 172, 181; 958 NW2d 629 (2020) ("An error does not require reversal if

---

[2] In response to a question from this Court, appellant specifically argued that the trial court committed clear error in not awarding him 75% of the proceeds.

it was not decisive to the outcome of the case."). The asserted error here was not decisive and thus does not require reversal.

Appellant also argues that the trial court improperly considered his failure to attend a ceremony at which Desiree's ashes were buried or his failure to ask where she was buried until his deposition.[3] At one point in its bench ruling, the trial court stated that appellant "did not attend Desiree's funeral and [when] asked why, he stated he was angry. In fact, it was not until the deposition—his deposition did he ask where she was buried." Appellant argues that these facts were irrelevant. Appellant relies on the following language from a lower federal court opinion:

> There is no Michigan caselaw that suggests funeral attendance bears on whether someone is entitled to wrongful-death settlement proceeds. While perhaps funeral attendance can serve as an objective measure for understanding whether or not there was *any* relationship between a survivor and decedent, one distinct event—which often has hundreds of attendees—does not seem particularly indicative of the type of relationship the decedent had with the claimant in relation to the overall characteristics of the relationship. People do and do not attend funerals for many reasons; the district court's apparent focus on discerning whether or not [the claimant] attended [the decedent's] funeral—especially when it seemed that [the claimant] had a strained relationship with other family members who would have been present—seems largely irrelevant to whether she was entitled to a portion of the settlement proceeds. [*Lewis v Flint Charter Twp*, 767 F App'x 591, 595 (CA 6, 2019) (quotation marks and citation omitted).]

Lower federal court decisions are not binding on this Court but may be considered for their persuasive value. *Abela v Gen Motors Corp*, 469 Mich 603, 606-607; 677 NW2d 325 (2004). Even if the reasoning in *Lewis* is deemed persuasive, the trial court here did not focus primarily on appellant's failure to attend the burial or to ask for the location of the gravesite until his deposition. The trial court relied predominantly on the fact that Webster was the primary parent who raised Desiree. Any error in referring to appellant's failure to attend the burial or to ask for the gravesite location was not decisive to the outcome and does not require reversal. *Ellison*, 320 Mich App at 179.

Appellant next contends that the trial court erred by considering evidence that was not part of the record. Appellant argues that Webster's bench brief: improperly provided photographs of Desiree that were not introduced as exhibits during the depositions; referred to Desiree's medical and counseling records that were not admitted into evidence or provided to appellant; and asserted that Webster has visited and maintained Desiree's grave and participated in suicide awareness walks even though there was no testimony to that effect. But there is no indication in the trial court's ruling that it considered or relied on any of the photographs contained in Webster's bench brief or any of the unsubstantiated assertions in the bench brief regarding Webster maintaining Desiree's grave and her participation in suicide awareness walks. Further, aside from the brief reference to Desiree's alleged fear of appellant as discussed earlier, there is nothing showing that the trial court relied on information from any medical or counseling records, which were not

---

[3] Appellant had attended an earlier funeral ceremony for Desiree.

admitted into evidence. As such, appellant has not established any outcome-determinative error arising from Webster's submission of her bench brief.

Appellant next argues that the trial court erred in assessing the credibility of Webster and Rain. Appellant says that, because the trial court did not hear the testimony but merely read the deposition transcripts, this Court can assess credibility just as well as the trial court did. But appellant cites no authority establishing that, when testimony is taken by deposition, this Court is free to substitute its own credibility determinations for those of the trial court. "A party may not simply announce a position and leave it to this Court to make the party's arguments and search for authority to support the party's position. Failure to adequately brief an issue constitutes abandonment." *Seifeddine v Jaber*, 327 Mich App 514, 519-520; 934 NW2d 64 (2019) (internal citation omitted). Appellant did not object to the use of deposition testimony. The trial court was the fact-finder in this matter and thus had authority to make credibility determinations. See generally, *Landin v Healthsource Saginaw, Inc*, 305 Mich App 519, 544; 854 NW2d 152 (2014) (noting that "[i]ssues of witness credibility are for the [trier of fact] to decide"). The parties' presentation of testimony by deposition does not alter the trial court's status as the fact-finder or permit this Court to make credibility assessments as a fact-finder. This Court "will not arbitrarily substitute its judgment for that of the fact finder." *May*, 122 Mich App at 298.

In any event, appellant provides no basis to question the trial court's credibility assessments. Appellant argues that Webster lacked credibility because she was an interested party who wanted all of the settlement proceeds. But by his own logic, appellant would also lack credibility because he seeks 75% of the settlement proceeds. Appellant has not explained how a person's mere interest in the settlement proceeds requires a determination that the person lacks credibility. Appellant further asserts that Webster and Rain were biased against him and attempted during their depositions to minimize the extent of appellant's relationship with Desiree. However, the predominant basis for the trial court's ruling was that Webster was the primary parent who raised and nurtured Desiree, and this point was undisputed in the trial court.

In a nutshell, appellant has not identified any basis on which this Court should disturb the trial court's credibility assessments, nor has he shown that the trial court clearly erred in distributing all of the net settlement proceeds to Webster.

## III. SANCTIONS

Appellant next argues that the trial court erred by failing to sanction Webster for alleged breaches of fiduciary duty in her capacity as personal representative of Desiree's estate. We again disagree with appellant.

Whether a fiduciary duty exists is a question of law that is reviewed de novo, *Prentis Family Foundation v Barbara Ann Karmanos Cancer Institute*, 266 Mich App 39, 43; 698 NW2d 900 (2005), and the determination whether to recognize a claim for breach of fiduciary duty is also reviewed de novo as a question of law, *Calhoun Co v Blue Cross Blue Shield of Mich*, 297 Mich App 1, 20; 824 NW2d 202 (2012).

To establish a claim for breach of fiduciary duty, a person must show: "(1) the existence of a fiduciary duty, (2) a breach of that duty, and (3) damages caused by the breach of duty." *Highfield Beach at Lake Mich v Sanderson*, 331 Mich App 636, 666; 954 NW2d 231 (2020).

> This Court has explained that a fiduciary relationship arises from the reposing of faith, confidence, and trust and the reliance of one on the judgment and advice of another. A breach of fiduciary duty arises when a person holding a position of influence and confidence abuses the influence and betrays the confidence. A person in a fiduciary relation to another is under a duty to act for the benefit of the other with regard to matters within the scope of the relation. [*Id*. at 666 n 13 (quotation marks and citations omitted).]

"Under Michigan law, a personal representative of an estate is not precluded by his or her official status from being a creditor of the deceased or asserting a claim against the estate." *In re Schwein Estate*, 314 Mich App 51, 59; 885 NW2d 316 (2016). "However, a personal representative owes a fiduciary duty to the heirs of the estate." *Id*., citing MCL 700.3703(1). "A fiduciary stands in a position of confidence and trust with respect to each heir, devisee, beneficiary, protected individual, or ward for whom the person is a fiduciary[,]" and among the duties owed are those of undivided loyalty and impartiality. MCL 700.1212(1). "A personal representative may not take advantage of his or her office to procure unfair advantage or influence because of the fiduciary relationship between a personal representative and the decedent's heirs." *In re Schwein Estate*, 314 Mich App at 60.

Hence, the fact that Webster was the personal representative of the estate did not preclude her from asserting a claim for the settlement proceeds in her personal capacity. *Id*. at 59. There is no evidence that Webster took advantage of her office to obtain an unfair advantage or influence when seeking the settlement proceeds. The dispute over the settlement proceeds was resolved in a fair and open process in which Webster and appellant each had the same opportunity to present evidence and arguments to the trial court. After which, the trial court then reached its decision. There is no basis to conclude that Webster breached any fiduciary duties in her capacity as personal representative.

## IV. CONCLUSION

The trial court did not err in its distribution of the settlement proceeds or by failing to sanction Webster. We affirm.

/s/ Michelle M. Rick
/s/ Michael J. Kelly
/s/ Michael J. Riordan