*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

---

*In re* ESTATE OF CYRIL GEORGE ARLISS, also known as CYRIL ARLISS, also known as GEORGE KROLIKOWSKI.

---

DANIEL FREDERICK, Personal Representative of the ESTATE OF CYRIL GEORGE ARLISS, also known as CYRIL ARLISS, also known as GEORGE KROLIKOWSKI,

      Plaintiff-Appellant,

v

DARREN FINDLING, THE PROBATE PRO, REGINALD ANWAN MILLER, also known as REGGIE MILLER, and NINA PETTIS,

      Defendants-Appellees.

UNPUBLISHED
November 16, 2023

No. 362013
Wayne Probate Court
LC No. 2019-848862-CZ

---

Before: BOONSTRA, P.J., and GADOLA and MALDONADO, JJ.

PER CURIAM.

Plaintiff, as the personal representative of the estate of Cyril George Arliss (the estate), appeals by right following the entry of a default judgment against defendants Reginald Anwan Miller (Miller) and Nina Pettis. On appeal, plaintiff challenges the probate court's earlier order granting summary disposition in favor of defendant Darren Findling and his company, the Probate Pro (collectively, Findling), and dismissing plaintiff's claims of negligence against Findling. We affirm.

## I. PERTINENT FACTS AND PROCEDURAL HISTORY

On January 28, 2018, Detroit police officers conducted a welfare check at Cyril George Arliss's home after a friend and neighbor, Mark Rudnicki, reported that he had not heard from

Arliss for several weeks. The officers discovered Arliss deceased. The medical examiner determined that Arliss had died of natural causes.

On February 6, 2018, the police investigated a reported breaking and entering at Arliss's home. On February 19, 2018, the police and the FBI also searched the home because of the suspected presence of guns and ammunition. The police found firearm parts and ammunition, but were unable to complete their search because of the volume of debris in the home. On May 22, 2018, a fire occurred at the home, resulting in the complete collapse and loss of the house and its contents.

Notice of Arliss's death and of the opening of the estate was published in a local newspaper for two weeks, beginning February 9, 2018. Findling was appointed as the personal representative of the estate on February 26, 2018. Defendant Miller presented Findling with Arliss's purported will (the will), dated September 5, 2015, which named Miller as a beneficiary of Arliss's estate. The will reflected that it was signed by Arliss, notarized by defendant Pettis, and also signed by three witnesses, Edmond Johnson, Barbara Miller, and Shakeel Clark.

On April 2, 2018, plaintiff filed a petition for probate, alleging that he was Arliss's only biological child and contesting the validity of the will. Plaintiff alleged that his mother and Arliss had divorced and that plaintiff was later adopted by his stepfather, who changed plaintiff's last name.[1] Findling contacted witnesses to the will, one of whom, Shakeel Clark, submitted an affidavit averring that he had known Arliss for a number of years before the will was executed, admitted that it was his signature on the will, and stated that although he did not personally see Arliss sign the will, Arliss had acknowledged his signature on the will in Clark's presence when Clark signed the will as a witness. In August 2018, plaintiff presented Findling with a report from a handwriting analyst, who opined that the signature on the will was not Arliss's signature. Plaintiff also presented evidence that Pettis was not actively commissioned as a notary public at the time she notarized the will. After this information was presented, Findling presented it to the probate court and also filed a petition requesting instruction on how to proceed. As the result of this petition, the probate court removed Findling as personal representative, appointed plaintiff as personal representative, and ordered Findling to file a final account.

In June 2019, plaintiff filed this action against defendants. Relevant to this appeal, the complaint asserted claims of negligence, breach of duty, fraud, silent fraud, and concert of action against Findling. Plaintiff alleged that Findling had breached his duties as personal representative to exercise reasonable care, skill, and caution in overseeing the estate, including by failing to investigate the validity of the will, failing to search for heirs, failing to properly dispose of Arliss's remains, and failing to safeguard estate assets.

Findling filed a motion for summary disposition under MCR 2.116(C)(8) and (10). Relevant to this appeal, Findling argued that plaintiff had failed to establish a genuine issue of

---

[1] Plaintiff provided the probate court with affidavits from himself and his mother stating that an adoption order had been entered for plaintiff's adoption by his stepfather in 1983. While stepparent adoption may affect a child's inheritance rights from a natural parent, see, e.g., MCL 700.2114 (3), in this case no parties appear to have disputed plaintiff's status as Arliss's heir.

material fact regarding whether Findling had breached any duties he had as a personal representative under the Estates and Protected Individuals Code (EPIC), MCL 700.1101 *et seq*. The trial court granted Findling's motion for summary disposition, thereby dismissing all of plaintiff's claims against Findling. The court later entered a default judgment against defendants Miller and Pettis. This appeal followed. As stated, plaintiff's arguments on appeal are limited to challenging the probate court's dismissal of his negligence claims against Findling.

## II. STANDARD OF REVIEW

This Court reviews de novo a trial court's decision on a motion for summary disposition. *El-Khalil v Oakwood Healthcare, Inc*, 504 Mich 152, 159; 934 NW2d 665 (2019). Because the parties relied on documentary evidence outside the pleadings and the trial court considered that evidence in granting Findling's motion, the trial court's grant of summary disposition was based on MCR 2.116(C)(10). See *Mazzola v Deeplands Dev Co, LLC*, 329 Mich App 216, 223; 942 NW2d 107 (2019). Summary disposition is appropriate under MCR 2.116(C)(10) if, "[e]xcept as to the amount of damages, there is no genuine issue as to any material fact, and the moving party is entitled to judgment or partial judgment as a matter of law." The moving party "must specifically identify the issues as to which the moving party believes there is no genuine issue as to any material fact" and support its motion with documentary evidence. *Maiden v Rozwood*, 461 Mich 109, 120; 597 NW2d 817 (1999), citing MCR 2.116(G)(4). To survive a motion for summary disposition, the party opposing the motion must set forth specific facts establishing a genuine issue of material fact for trial. *Maiden*, 461 Mich at 120-121, citing MCR 2.116(G)(4). A genuine issue of material fact exists when the evidence presented "leave[s] open an issue upon which reasonable minds might differ." *Debano-Griffin v Lake Co*, 493 Mich 167, 175; 828 NW2d 634 (2013) (quotation marks and citation omitted).

This Court also reviews de novo questions of statutory interpretation. *PNC Nat'l Bank Ass'n v Dep't of Treasury*, 285 Mich App 504, 505; 778 NW2d 282 (2009).

## III. SUMMARY DISPOSITION

Plaintiff argues that the trial court erred by granting Findling's motion for summary disposition with respect to his negligence claims, for several reasons. We disagree.

To establish a prima facie case of negligence, a plaintiff must satisfy the following elements:

> (1) the defendant owed the plaintiff a legal duty, (2) the defendant breached the legal duty, (3) the plaintiff suffered damages, and (4) the defendant's breach was a proximate cause of the plaintiff's damages. [*Powell-Murphy v Revitalizing Auto Communities Env't Response Tr*, 333 Mich App 234, 243; 964 NW2d 50 (2020) (quotation marks and citation omitted).]

EPIC governs wills and the administration of estates in Michigan. *In re Estate of Horton*, 325 Mich App 325, 330; 925 NW2d 207 (2018). "The provisions in EPIC must 'be liberally construed and applied to promote its underlying purposes and policies,' MCL 700.1201, including to 'discover and make effective a decedent's intent in distribution of the decedent's property,' MCL 700.1201(b)." *Id*.

EPIC provides that "[a] personal representative is a fiduciary who shall observe the standard of care applicable to a trustee as described by section 7803." MCL 700.3703(1). MCL 700.1212(1) provides, in pertinent part:

> A fiduciary stands in a position of confidence and trust with respect to each heir, devisee, beneficiary, protected individual, or ward for whom the person is a fiduciary. A fiduciary shall observe the standard of care described in section 7803 and shall discharge all of the duties and obligations of a confidential and fiduciary relationship, including the duties of undivided loyalty; impartiality between heirs, devisees, and beneficiaries; care and prudence in actions; and segregation of assets held in the fiduciary capacity.

MCL 700.7803 provides that a personal representative "shall act as would a prudent person in dealing with the property of another, including following the standards of the Michigan prudent investor rule." "A personal representative is under a duty to settle and distribute the decedent's estate in accordance with the terms of a probated and effective will as expeditiously and efficiently as is consistent with the best interests of the estate." MCL 700.3703(1). "[I]n EPIC, the Legislature imposed specific obligations on personal representatives to faithfully execute their duties for the benefit of the estate's successors and imposed liability and damages when a personal representative fails to perform his or her duties on behalf of the estate." *In re Schwein Estate*, 314 Mich App 51, 63; 885 NW2d 316 (2016).

Plaintiff argues that Findling breached his duties as personal representative by failing to investigate the authenticity of the will that was produced by Miller, failing to further inquire into the existence of heirs, failing to properly carry out Arliss's wishes regarding funeral and burial arrangements and the disposition of his body, and failing to create an accurate inventory of the estate and allowing the unlawful conversion of the estate's property. He also argues that summary disposition was premature. We address each argument in turn.

## A. VALIDITY OF THE WILL

Plaintiff argues that Findling breached his duty to investigate and authenticate the will provided by Miller. We disagree. MCL 700.2502(1), which sets forth the requirements of a valid will, provides:

> (1) Subject to section 1202 and except as provided in subsection (2) and in 2503, 2506, and 2513, a will is valid only if it is all of the following:
>
> (a) In writing.
>
> (b) Signed by the testator or in the testator's name by some other individual in the testator's conscious presence and by the testator's direction.
>
> (c) Signed by at least 2 individuals, each of whom signed within a reasonable time after he or she witnessed either the signing of the will as described in subdivision (b) or the testator's acknowledgment of that signature or acknowledgment of the will.

Under MCL 700.3407(1)(b), the proponent of the will "has the burden of establishing prima facie proof of due execution. . . ." The presence of an attestation clause in a will "gives rise to a presumption that the will was executed in conformity with the recitations in the clause." *In re Clark Estate*, 237 Mich App 387, 392-393; 603 NW2d 290 (1999).

The will that Miller presented to Findling was in writing and reflected that it was signed by the testator and signed by three individuals who, according to an attestation clause, had witnessed Arliss signing the will. At that time, the will was uncontested and conformed to MCL 700.2502, creating a presumption that the will had been properly executed. *In re Clark Estate*, 237 Mich App at 393. After plaintiff filed a petition for probate alleging that he was Arliss's biological child and contesting the validity of the will, Findling contacted witnesses to the will and obtained an affidavit from Clark averring that he had known Arliss for a number of years before the execution of the will, that Clark had signed the will, and that Arliss had acknowledged his signature on the will to Clark when Clark signed the will as a witness.

After Findling was presented with the handwriting analyst's report and the information regarding Pettis's alleged lack of a valid notary public commission, he filed a petition for instruction and submitted the handwriting analyst's report and the information regarding Pettis to the probate court. Findling also reported to the probate court that he was unable to locate Miller and had not had any further contact with Miller. As a result of this petition, the probate court removed Findling as personal representative, appointed plaintiff as personal representative, and ordered Findling to file a final account.

A personal representative is under a duty to settle and distribute the decedent's estate in accordance with the terms of a probated and effective will as expeditiously and efficiently as is consistent with the best interests of the estate. MCL 700.3703(1). The record shows that Findling was presented with a presumptively valid will. MCL 700.2502(1), *In re Clark Estate*, 237 Mich App at 392-393, MCL 700.3407(1)(b). Plaintiff, as the will contestant, "ha[d] the burden of establishing lack of testamentary intent or capacity, undue influence, fraud, duress, mistake or revocation." MCL 700.3407(1)(c). When plaintiff challenged the will's validity, Findling acted diligently in investigating the matter and seeking further guidance from the probate court. Plaintiff does not explain why he believes that Findling had an initial duty to further investigate the validity of the will beyond ensuring that it was prima facie valid, or why it was inappropriate for Findling to petition the court for instruction after plaintiff presented evidence challenging the validity of the will. Plaintiff has not demonstrated that there is a genuine issue of material fact regarding whether Findling had a duty to further investigate the validity of the will or whether Findling breached any duty as a personal representative in responding to plaintiff's challenge to the will.

## B. INVESTIGATION INTO THE EXISTENCE OF OTHER HEIRS

Plaintiff also argues that the probate court erred by dismissing his claim that Findling was negligent by failing to further investigate the existence of heirs. We disagree.

In *In re Estate of Stan*, 301 Mich App 435, 447 n 5; 839 NW2d 498(2013), this Court stated:

A personal representative owes a fiduciary duty to each devisee, heir, and beneficiary. MCL 700.1212(1); see also MCL 700.1104(e) and MCL 700.3703(1). A personal representative must "discharge all of the duties and obligations of a confidential and fiduciary relationship, including the duties of undivided loyalty; impartiality between heirs, devisees, and beneficiaries; [and] care and prudence in actions. . . ." MCL 700.1212(1). He or she "shall keep each presumptive distributee informed of the estate settlement," and must regularly "account to each beneficiary by supplying a statement of the activities of the estate and of the personal representative. . . ." MCL 700.3703(4).

MCL 700.3705(1) provides, in pertinent part:

Not later than 28 days after a personal representative's appointment or other time specified by court rule, the personal representative, except a special personal representative, shall give notice of the appointment to the decedent's heirs and devisees, except those who have executed a written waiver of notice, including, if there has been no formal testacy proceeding and if the personal representative is appointed on the assumption that the decedent died intestate, the devisees in a will mentioned in the application for appointment of a personal representative and to the trustee of a trust described in section 7605(1)1 as to which the decedent was settlor. The personal representative shall give the notice by personal service or by ordinary first-class mail to each person required to receive notice under this subsection whose address is reasonably available to the personal representative.

In this case, "Publication of Notice of Intent to Request Informal Appointment of Personal Representative" was published in the *Detroit Legal News* for 14 days, beginning February 9, 2018, giving notice to all potential interested parties of the estate and Findling's nomination as personal representative. Findling presented the probate court with evidence of his efforts to locate any living relatives of Arliss after his appointment as personal representative. He conducted an internet search and found information regarding Arliss's deceased relatives; his search did not reveal any living relatives. Although plaintiff generally asserts that Findling should have searched Arliss's "vital records," plaintiff has not identified any particular search methodology that would have produced documentation demonstrating plaintiff's existence or relationship to Arliss. Plaintiff's own documentary evidence submitted to the trial court indicated that plaintiff was adopted and his last name changed in 1983. Further, plaintiff submitted evidence that Arliss's neighbor, Rudnicki, hired an attorney to investigate Arliss's possible heirs, and that the attorney essentially found the same information that Findling did—notably, this attorney also did not discover plaintiff's existence or relationship to Arliss. Plaintiff has not established a genuine issue of material fact regarding whether Findling was negligent in attempting to provide the notice required under MCL 700.7305(1).

Plaintiff also questions whether Findling adequately investigated Miller's claim to be Arliss's heir, particularly after Rudnicki reported not being familiar with Miller. As noted, however, Findling was presented with a presumptively valid will that named Miller as a beneficiary, and he contacted witnesses to the will, including Clark, who admitted being present when Arliss acknowledged signing the will. Findling did not have any duty to Miller at that point. Additionally, as discussed, once plaintiff appeared and presented evidence questioning the validity

-6-

of the will, Findling appropriately petitioned for instruction and presented that evidence to the probate court. For these reasons, the trial court did not err by concluding that plaintiff failed to establish a genuine issue of material fact regarding whether Findling breached his duties under EPIC by failing to further inquire into the existence of heirs.

## C. REMAINS

Plaintiff next argues that Findling breached his duties under EPIC by negligently allowing Arliss's body to be cremated and losing his remains. We disagree.

A personal representative "may carry out the decedent's written instructions relating to the decedent's body, funeral, and burial arrangements." MCL 700.3701. MCL 700.3206(1) and (6) also provide that a personal representative may "make decisions about funeral arrangements and the handling . . .of a decedent's body including, but not limited to, decisions about cremation, and the right to retrieve from the funeral establishment and possess cremated remains of the decedent immediately after cremation."

On February 28, 2018, Findling sent a cremation and process authorization form to Serenity Cremation Services, Inc. Findling authorized Serenity to forward the remains to the Clora Funeral Home in Detroit. Although plaintiff asserts that Findling had a duty to ensure that Arliss's body was disposed of in accordance with his wishes, plaintiff does not identify any document that expressed Arliss's wishes regarding disposition. Under MCL 700.3701 and MCL 700.3206, Findling had the authority to order cremation. At the time cremation was ordered, Findling was not aware of any known heirs. Plaintiff argues that Findling should have conferred with Rudnicki regarding the disposition of Arliss's remains, but Rudnicki had no rights or authority with regard to Arliss's remains because he was not an heir or beneficiary and was not a funeral representative designated by MCL 700.3206. Moreover, Findling did not owe a duty to Rudnicki, a non-interested third party. And although plaintiff complains that Findling "lost" Arliss's remains, he did not present any evidence that Findling ever had possession of the remains after cremation. Therefore, the trial court did not err by finding that plaintiff failed to establish a genuine issue of material fact regarding whether Findling breached any duty regarding Arliss's remains.

## D. ACCURATE INVENTORY OF ESTATE ASSETS/FAILURE TO SECURE ESTATE ASSETS

Plaintiff argues on appeal that Findling failed to prepare an inventory of the estate's property after Arliss's death. Plaintiff did not raise this issue in the trial court. Plaintiff has therefore waived this issue for appellate review. *Tolas Oil & Gas Exploration Co v Bach Servs & Manf, LLC*, ___ Mich App ___, ___; ___ NW2d ___ (2023) (Docket No. 359090); slip op at 2.

Plaintiff also complains that Findling failed to secure the estate's assets, which resulted in the conversion of the estate's property. The record shows that approximately 85 days after Findling's appointment, a fire destroyed Arliss's home. The fire department determined that the fire caused a complete collapse and total loss of the home. Before the fire, some firearm parts and ammunition were removed by the FBI and the Detroit police. Although plaintiff alluded in his complaint to allegedly stolen coins and guns, he never presented any evidence of specific items that were in the home that Findling should have preserved. Findling presented evidence of his

attempts to retrieve the items that the Detroit police confiscated from Arliss's home. Findling also presented photos that depicted a house filled with debris and refuse, which corroborated the police reports concerning the state of the home.

Findling was permitted to "[a]bandon property when, in the opinion of the personal representative, it is valueless, or is so encumbered or in such a condition as to be of no benefit to the estate." MCL 700.3715(1)(k). Considering the evidence that the house was full of trash and debris and that the police had to clear a pathway due to an apparent "hoarding" situation when they discovered Arliss's body, the photos confirming that the home was filled with refuse, and plaintiff's failure to present any evidence of specific items with material value, the trial court did not err by dismissing plaintiff's claim that Findling breached a duty to secure and preserve estate assets.

## E. PREMATURITY

Plaintiff complains that summary disposition was premature because it was granted before the completion of discovery. We disagree.

Generally, summary disposition is premature if discovery on a disputed issue has not been completed. *Walrath v Witzenmann USA, LLC*, 320 Mich App 125, 144; 904 NW2d 875 (2017).

> However, the mere fact that the discovery period remains open does not automatically mean that the trial court's decision to grant summary disposition was untimely or otherwise inappropriate. The question is whether further discovery stands a fair chance of uncovering factual support for the opposing party's position. In addition, a party opposing summary disposition cannot simply state that summary disposition is premature without identifying a disputed issue and supporting that issue with independent evidence. The party opposing disposition must offer the required MCR 2.116(H) affidavits, with the probable testimony to support its contentions. [*Marilyn Froling Revocable Living Trust, v Bloomfield Hills Country Club*, 283 Mich App 264, 292; 769 NW2d 2343 (2009) (citations omitted).]

In this case, the trial court never entered a scheduling order setting a specific date for the close of discovery, because the parties agreed to mediation approximately three months after plaintiff filed his complaint. Mediation was completed on September 28, 2020, two months before the trial court granted Findling's motion for summary disposition. We therefore assume that the discovery period remained open. Nonetheless, plaintiff has not established that further discovery stood a fair chance of uncovering factual support for his claims. *Id*.

On appeal, plaintiff lists several potential witnesses and opines that they could have offered information to support his claims if deposed; these potential witnesses included Darren Findling himself, Rudnicki, Miller, and others. However, plaintiff offers only vague summaries of the witnesses' expected testimony, unsupported by any affidavits or independent evidence to demonstrate factual support for any disputed material issues. For example, plaintiff argues that the depositions of employees of the funeral home and crematorium would have "shed light on the happenings surrounding the cremation of the Decedent" but fails to explain how that testimony

would have assisted his claim, when it was undisputed that Findling ordered Arliss's cremation. Plaintiff also argues that the deposition of Rudnicki and the attorney he hired would have "provided insight into the communications those parties had with [Findling] in the early days of [Findling's] tenure as personal representative[]." But plaintiff provided evidence regarding that communication, and he provided the trial court with copies of written correspondence indicating that Rudnicki was conducting his own research into Arliss's possible heirs and "burial options." This evidence was not disputed. Plaintiff does not explain what further evidence would have been uncovered via deposition, or how that evidence would have established the existence or breach of a duty by Findling. Accordingly, plaintiff has not demonstrated that summary disposition was premature. *Id.*

The order denying in-person depositions also did not conflict with or contradict the probate court's later order granting summary disposition. Contrary to plaintiff's characterization, the probate court did not order that any depositions be conducted; it merely denied Findling's motion to compel in-person depositions rather than allow them to take place via videoconferencing software. The probate court's order permitting depositions via Zoom is not relevant to the probate court's grant of summary disposition.

Plaintiff also argues that the probate court erred by denying his motion for reconsideration, which was based on the issues discussed earlier. For the reasons already discussed, however, the probate court did not err by granting Findling's motion for summary disposition, and summary disposition was not premature, so the court did not err by also denying plaintiff's motion for reconsideration.

## IV. DUE PROCESS

Plaintiff argues that the trial court deprived him of his right to due process. We disagree. While this Court need not address unpreserved issues, we may do so if the issue involves "a question of law and the facts necessary to resolve it have been presented." *Gen Motors Corp v Dep't of Treas*, 290 Mich App 355, 386; 803 NW2d 698 (2010). We therefore review his constitutional claim for plain error affecting the outcome of the proceedings, to the extent that the facts necessary to resolve that claim have been presented. *Lima Twp v Bateson*, 302 Mich App 483, 503; 838 NW2d 898 (2013).

"Due process in civil cases generally requires notice of the nature of the proceedings, an opportunity to be heard in a meaningful time and manner, and an impartial decisionmaker." *Cummings v Wayne Co*, 210 Mich App 249, 253; 533 NW2d 13 (1995). In this case, plaintiff argues that he was denied the due process of law when the probate court granted defendant's motion immediately after denying what he describes as Findling's motion to require in-person depositions. As discussed, we disagree with plaintiff's characterization of the probate court's order. We find no error, plain or otherwise.

Plaintiff also argues that the probate court ignored material evidence, such as plaintiff's handwriting analysis report and the evidence of Pettis's invalid notary commission. We disagree. The record shows that the probate court did not ignore this evidence, which was relevant to the validity of the September 5, 2015 document that was offered as Arliss's will. The court merely found that this evidence did not demonstrate a breach of Findling's duties as personal

representative. As already discussed, the probate court did not err by dismissing plaintiff's negligence claims on the basis of the submitted evidence.

Plaintiff also complains that Findling failed to comply with discovery requests. Because plaintiff did not raise this argument in the probate court, we need not address it. *Tolas Oil & Gas Exploration Co*, ___ Mich App at ___; slip op at 2. Moreover, this claim would require factual development and is not solely a question of law; we therefore decline to overlook our preservation requirements. *Gen Motors Corp*, 290 Mich App at 386.

Plaintiff also makes some arguments concerning the fees charged to the estate by Findling. However, the probate court specifically declined to address this issue, noting that the fees had been addressed in a separate probate court proceeding. The issue is therefore not properly before this Court.

Plaintiff also argues that the default judgment entered against defendants Miller and Pettis[2] "does not reflect the damages suffered by [plaintiff] resulting from [Findling's] violations of EPIC," and plaintiff further asserts that "[t]he final default judgment did not properly close the case because summary disposition was wrongfully decided regarding Appellees Findling and the Probate Pro." We disagree that any error occurred. The default judgment was indeed entered only against Miller and Pettis; Findling was dismissed from the case by the probate court's earlier order granting his motion for summary disposition. Plaintiff was not entitled to any damages against Findling. And, as stated, we find no merit to any of plaintiff's arguments that the trial court erred by granting summary disposition to Findling.

Affirmed. As the prevailing parties, defendants Darren Findling and the Probate Pro may tax costs. MCR 7.219(A).

/s/ Mark T. Boonstra
/s/ Michael F. Gadola
/s/ Allie Greenleaf Maldonado

---

[2] The default judgment was in the amount of $150,000.