*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

JANET JACKSON, Personal Representative of the
ESTATE OF JOHN NEILSON JACKSON,

UNPUBLISHED
August 10, 2023

       Plaintiff-Appellee,

v

No. 360831
Wayne Circuit Court
LC No. 19-002256-NF

PIONEER STATE MUTUAL INSURANCE
COMPANY,

       Defendant-Appellant.

Before: BOONSTRA, P.J., and LETICA and FEENEY, JJ.

PER CURIAM.

Defendant appeals by right the judgment in favor of plaintiff entered by the trial court after a jury trial. We affirm.

## I. PERTINENT FACTS AND PROCEDURAL HISTORY

On February 22, 2018, John Jackson (John), then 82 years old, was involved in a motor vehicle accident. Defendant was Jackson's no-fault automobile insurer at the time of the accident. In 2019, John filed suit against defendant, alleging that defendant had refused to pay all of the personal protection injury (PIP) benefits to which he was entitled under the no-fault act. John died while this matter was pending and the personal representative of his estate was substituted as the plaintiff.

At trial, plaintiff claimed that John had suffered a minor stroke while driving, which caused him to strike another vehicle and caused his head to strike the steering wheel of his own vehicle, resulting in severe head trauma, including a nasal fracture and a serious nose bleed. Some of the blood entered John's lung, which impacted the flow of oxygen to his brain. John was hospitalized for approximately 12 days in an intensive care unit after the accident, and then spent approximately seven weeks in a rehabilitation facility. Plaintiff alleged that defendant had refused to pay PIP benefits he was due, including medical expenses, replacement services, and attendant-care services provided by John's wife (Janet) and their son (Robert), as they cared for him 24 hours a day, seven days a week, in the family home until his death. Plaintiff presented witnesses, including his

-1-

treating physicians and expert witnesses, who attributed John's physical decline and need for continuing care to the injuries and trauma he experienced in the motor vehicle accident.

Defendant paid some medical expenses for John's care after the accident, but denied liability for other benefits. Defendant's position at trial was that, after John had received medical treatment related to the accident for a period of time, his remaining health conditions were attributable to other preexisting conditions or supervening causes. At trial, defendant offered the testimony of its own expert witnesses, who opined that John's condition after June 30, 2018 was primarily due to other preexisting conditions and strokes unrelated to the motor vehicle accident. Defendant pointed out that John had experienced another stroke shortly after the accident, which defendant claimed was the reason he needed continuing care from his family.

The jury found that John had sustained an accidental bodily injury, that the injury arose out of the ownership, operation, maintenance, or use of a motor vehicle as a motor vehicle on February 22, 2018, and that allowable expenses were incurred by or on behalf of John arising out of the accident. The jury awarded plaintiff $686,294.42 for medical expenses and attendant care services. The jury also found that John had incurred replacement-service expenses as a result of the accidental bodily injury and awarded benefits of $15,500. Finally, the jury found that payment for the expenses was overdue, entitling plaintiff to $105,679.75 in interest.

After the jury's verdict, defendant moved the trial court for a judgment notwithstanding the verdict (JNOV), arguing that plaintiff had failed to offer any proof that it had incurred any obligation for the payment of attendant care services, replacement services, or medical payments. The trial court denied the motion and subsequently entered a judgment reflecting the jury's verdict. This appeal followed.

## II. JNOV

Defendant argues that the trial court erred by denying its motion for JNOV. We disagree. This Court reviews de novo a trial court's ruling on a motion for JNOV. *Hecht v Nat'l Heritage Academies, Inc*, 499 Mich 586, 604; 886 NW2d 135 (2016). We review a trial court's ruling on a motion for JNOV by reviewing the evidence and all legitimate inferences in the light most favorable to the nonmoving party. *Hecht*, 499 Mich at 604. "Only if the evidence so viewed fails to establish a claim as a matter of law, should the motion be granted." *Id*. If reasonable jurors could have honestly reached different conclusions, the jury's verdict must stand. *Id*. at 605-606.

After the jury returned its verdict, defendant moved for JNOV, arguing that Janet, as personal representative of plaintiff, never presented a claim for medical expenses to the estate as is required of estate creditors, and that plaintiff therefore never incurred any liability to Janet or Robert for attendant care or replacement services. Plaintiff argued that defendant was precluded from raising this argument because it did not assert it as an affirmative defense and had delayed raising this issue to plaintiff's prejudice. Further, plaintiff noted that this action was filed while John was still alive, and that his claims survived his death regardless of any probate court proceedings. The trial court denied defendant's motion, stating:

> First, the Court does agree that this is an affirmative defense and it was not brought and it was not brought timely. As far as even if the—it is thought that this

-2-

was not an affirmative defense, the Court notes the Plaintiff was alive when the claims were brought and the suit was filed for these claims. The personal—and he passed away, during the suit. A PR was merely named in the suit to substitute in for the deceased and to represent the claims that were already filed. The claims would survive, you know, the death and are not extinguished merely due to his death and as an insured incurs an expense, under [MCL] 500.3107, Section 1, when he becomes liable for it and responsible and that's claimed prior to his death when he filed the—when he filed the suit when he was alive. And so I do not agree with Defense counsel's interpretation of the probate statute, that this somehow limits the estate's ability to proceed on this claim and—and for the reasons stated by the Plaintiff, the Court is going to [deny] the motion for judgment notwithstanding the verdict.

Defendant argues on appeal that it was entitled to JNOV because plaintiff did not incur any obligation to pay Janet or Robert for attendant care or replacement services, because there was no evidence that they submitted any claims for reimbursement to the estate. Defendant's argument assumes that Janet and Robert were estate creditors who were required to seek reimbursement for their services directly from John, and therefore from his estate upon his death, and that their alleged failure to properly pursue a claim against John or his estate thereby relieves defendant of any liability for payment of attendant care or replacement services to *John*, defendant's insured. We disagree. John (and, subsequent to his passing, his estate) was entitled to seek recovery of no-fault benefits for attendant care and replacement services before his death, and those claims survived his death.

In order to recover "allowable expenses" under MCL 500.3107(1), the plaintiff bears the burden of proving that (1) the charge for the service performed was reasonable, (2) the expense was reasonably necessary, and (3) the expense was incurred. *Williams v AAA Mich*, 250 Mich App 249, 258; 646 NW2d 476 (2002). In *Douglas v Allstate Ins Co*, 492 Mich 241, 267-269; 821 NW2d 472 (2012), our Supreme Court explained the meaning of "incur" under MCL 500.3107(1)(a), stating:

> This Court has defined "incur" as it appears in MCL 500.3107(1)(a) as " '[t]o become liable or subject to, [especially] because of one's own actions.' " Similarly, a "charge" is a "[p]ecuniary burden, cost" or "[a] price required or demanded for service rendered or goods supplied." Thus, the statutory requirement that "charges" be "incurred" requires some degree of liability that exists as a result of the insured's actually having received the underlying goods or services. Put differently, because a charge is something "required or demanded," the caregiver must have an expectation that she be compensated because there is no "charge[] incurred" when a good or service is provided with *no* expectation of compensation from the insurer. Accordingly, this Court noted in *Burris v Allstate Insurance Co* [480 Mich 1081; 745 NW2d 101 (2008),] that caregivers must have "expected compensation for their services." Without the expectation of compensation, "the evidence fail[s] to establish that the plaintiff 'incurred' attendant-care expenses."

> The fact that charges have been incurred can be shown "by various means," including "a contract for products and services" or "a paid bill." The requirement

of proof is not extinguished simply because a family member, rather than a commercial health care provider, acts as a claimant's caregiver. Indeed, MCL 500.3107(1)(a) does not distinguish a "charge[] incurred" when a family member provides care from one incurred when an unrelated medical professional provides care. As a result, there is only one evidentiary standard to determine whether expenses were incurred regardless of who provided the underlying services. *Any* insured who incurs charges for services must present proof of those charges in order to establish, by a preponderance of evidence, that he is entitled to PIP benefits. [Footnotes omitted, emphasis in original.]

Whether expenses were incurred focuses on the right to payment from the *insurer*. *Douglas*, 492 Mich at 267-268 n 56. Defendant's argument relates to the probate proceedings and the right of a caregiver to receive payment from an estate, rather than the right of an insured to expect and receive payment from his insurer. Defendant is correct that a personal representative who has a personal claim against a decedent is obligated to file a claim against the estate. See *In re Schwein Estate*, 314 Mich App 51, 59-63, 66-67; 885 NW2d 316 (2016). However, defendant mischaracterizes the claims for recovery of attendant care and replacement-service benefits as claims belonging only to Janet or Robert, and not to John as defendant's insured. The attendant care and replacement service costs were incurred by John when he was still alive. It is John's estate, not Janet or Robert, that is pursuing recovery of no-fault benefits owed to John for attendant care and replacement services, and those claims survived John's death. As the trial court recognized, John filed this lawsuit before his death, alleging that he was entitled to recover benefits for attendant care and replacement services performed by Janet and Robert. It was John, as the insured and injured party, who claimed entitlement to these benefits. Neither Janet nor Robert was a party to this action. Although John died while this action was pending, MCL 600.2921 expressly provides that "[a]ll actions and all claims survive death." Defendant's argument that the validity of a surviving no-fault claim is governed by the Estates and Protected Individuals Code (EPIC), MCL 700.1101 *et seq*., mischaracterizes the claim for recovery of attendant care and replacement-service benefits as belonging only to Janet or Robert (the ultimate recipients of payment for those services), and not to John or his estate.

Furthermore, the trial court did not err by denying defendant's motion for JNOV on procedural grounds. MCR 2.111(F) provides, in relevant part:

> (2) *Defenses Must Be Pleaded; Exceptions*. A party against whom a cause of action has been asserted by complaint, cross-claim, counterclaim, or third-party claim must assert in a responsive pleading the defenses the party has against the claim. A defense not asserted in the responsive pleading or by motion as provided by these rules is waived, except for the defenses of lack of jurisdiction over the subject matter of the action, and failure to state a claim on which relief can be granted. However,

> * * *

> (3) *Affirmative Defenses*. Affirmative defenses must be stated in a party's responsive pleading, either as originally filed or as amended in accordance with

MCR 2.118. Under a separate and distinct heading, a party must state the facts constituting

   (a) an affirmative defense, such as contributory negligence; the existence of an agreement to arbitrate; assumption of risk; payment; release; satisfaction; discharge; license; fraud; duress; estoppel; statute of frauds; statute of limitations; immunity granted by law; want or failure of consideration; or that an instrument or transaction is void, voidable, or cannot be recovered on by reason of statute or nondelivery;

   (b) a defense that by reason of other affirmative matter seeks to avoid the legal effect of or defeat the claim of the opposing party, in whole or in part;

   (c) a ground of defense that, if not raised in the pleading, would be likely to take the adverse party by surprise.

Under MCR 2.111(F)(2) and (3), defendant was required to plead its affirmative defenses, and any such defense not pleaded is considered waived.

Defendant argues that the affirmative defense at issue was at least impliedly pled in the following defenses:

   1. Plaintiff may not have standing to pursue this case.

   * * *

   21. Plaintiff may be seeking amounts for claims or losses that were unreasonably incurred, not reasonably necessary, and/or not reasonably related to his ownership, operation, maintenance or use of a motor vehicle as a motor vehicle, as required under MCL 500.3105.

   * * *

   30. Defendant Pioneer State Mutual Insurance Company hereby reserves the right to amend its Answer and add Affirmative Defenses pursuant to investigation and discovery into the allegations contained in the Plaintiff's Complaint.

We disagree. None of these asserted defenses was sufficient to give plaintiff notice that defendant was relying on EPIC to assert that plaintiff's claims for recovery of attendant care and replacement services were barred because timely claims were not filed in the probate court.

Defendant also requests the right to amend its affirmative defenses to add this defense. Under MCR 2.118(A)(2), "leave [to amend a pleading] shall be freely given when justice so requires." A party may move to amend its affirmative defenses at any time. Leave should be freely granted unless doing so would prejudice the other party. *Glasker-Davis v Auvenshine*, 333 Mich App 222, 230; 964 NW2d 809 (2020). Defendant never moved to amend its affirmative

defenses in the trial court; moreover, as stated, we also find the substance of defendant's argument unconvincing.

For these reasons, the trial court did not err by denying defendant's motion for JNOV.

## III. GREAT WEIGHT OF THE EVIDENCE

Defendant also argues that the jury's verdict was against the great weight of the evidence. However, to preserve an issue concerning the great weight of the evidence, a party must raise the issue in a motion for a new trial. *Hyde v Univ of Mich Bd of Regents*, 226 Mich App 511, 525; 575 NW2d 36 (1997). In a civil case, in which a defendant fails to raise a great-weight issue in a motion for a new trial, the issue is waived. *Rickwalt v Richfield Lakes Corp*, 246 Mich App 450, 464; 633 NW2d 418 (2001). Defendant did not raise this issue in a motion for a new trial in the trial court. Therefore, this issue is waived and we decline to consider it.[1]

## IV. DENIAL OF PARTIAL SUMMARY DISPOSITION

Defendant also argues that the trial court erred by denying its pre-trial motion for partial summary disposition. We disagree.

We review de novo a trial court's decision on a motion for summary disposition. *El-Khalil v Oakwood Healthcare, Inc*, 504 Mich 152, 159; 934 NW2d 665 (2019). Defendant moved for partial summary disposition under MCR 2.116(C)(8) and (10). "A motion brought under MCR 2.116(C)(8) tests the legal sufficiency of a claim based on the factual allegations in the complaint." *El-Khalil*, 504 Mich at 159. A reviewing court "must accept all factual allegations as true, deciding the motion on the pleadings alone." *Id*. at 160. The motion may "only be granted when a claim is so clearly unenforceable that no factual development could possibly justify recovery." *Id*. A motion under MCR 2.116(C)(10) tests the factual support for a claim. *Innovation Ventures v Liquid Mfg*, 499 Mich 491, 507; 885 NW2d 861 (2016). When reviewing a motion under MCR 2.116(C)(10), "a trial court considers affidavits, pleadings, depositions, admissions, and other evidence submitted by the parties . . . in the light most favorable to the party opposing the motion." *Id*. Summary disposition is appropriate when the moving party fails to establish a genuine issue regarding any material fact and the moving party is entitled to judgment as a matter of law. *Id*.

In this case, defendant moved for partial summary disposition on plaintiff's claims for attendant care and replacement services provided by Janet and Robert. According to defendant, John's treating doctors had not ordered 24/7 attendant care for John, and the only support for this claim was the report of plaintiff's retained expert, Dr. Bradley Sewick, a clinical neuropsychologist. Defendant argued that because Dr. Sewick was a retained expert and not a treating physician, John could not rely on Dr. Sewick's report to support this claim. Defendant

---

[1] Although some cases have reviewed unpreserved great-weight issues for plain error affecting a party's substantial rights, this Court has recently clarified that the plain-error test does not apply in civil cases. *Tolas Oil & Gas Exploration Co v Bach Servs & Mfg, LLC*, ___ Mich App ___, ___; ___ NW2d ___ (Docket No. 359090); slip op at 2-4.

further argued, however, that even if John was entitled to some coverage for attendant care, Robert's testimony established that coverage for such care was limited to only 12 to 14 hours of daily care.

Plaintiff argued in response that evidence from Dr. Sewick, Dr. Elizabeth Morelli (John's family physician), and a neurosurgeon, Dr. Tejpaul Pannu, all supported plaintiff's claim for 24/7 attendant-care benefits for services provided by family members. Dr. Sewick stated in an addendum report to his neuropsychological evaluation of John in September 2019:

> Based upon my clinical assessment, the test results, and my review of the records, it is my opinion that injuries caused by the 2/22/18 automobile accident including brain injuries are an indication for around-the-clock oversight, monitoring, supervision, and direct care as needed.

Dr. Sewick further testified at his deposition that John required one-to-one care at his home or in a residential treatment facility, and that John could not care for himself and it would endanger his life not to have someone present to help him.

Dr. Pannu, a neurosurgeon and plaintiff's expert witness, also agreed that the severe head injury that John suffered in the car accident caused progressive neurological decline. Dr. Pannu also found that John required attendant-care services. Plaintiff provided a letter from Dr. Pannu stating these conclusions, although the letter was not notarized and was addressed "To Whom It May Concern."

Janet testified at her deposition that she did not keep a diary of the amount of time she spent doing things for John, but she "just kn[e]w." Both she and Robert were sometimes at home to care for John and there were times when both of them were needed, such as if John fell, because it took two of them to help him get up. When both of them were gone, it was necessary to have someone present with John.

Robert also testified at his deposition regarding the amount of daily care provided to John:

> *Q.* And you guys are claiming 24/7 attendant care in this claim that is being brought forth today.
>
> Are you aware of that?
>
> *A.* No, I didn't. I just know that it's some kind of care.
>
> *Q.* And so as far as us being able to determine how many hours and days and the things that you have done for him, is there any way that we can look at something to figure out what you have done and how long you have done it for?
>
> *A.* It's been probably 12 to 14 hours a day. I mean if you are not counting sleep, that's eight hours out of that. Probably 15, 16 hours a day. That doesn't mean that you are doing something every minute. I still go out and do my five miles of running and any other physical activities that I do.

He agreed that one person needed to be at home to supervise John.

Plaintiff also submitted an affidavit from Janet, who stated that she and her son provided 24-hour attendant care for John, seven days a week, and describing the type of care provided, because, since the accident, John was not able to independently care for himself or be left alone for any extended period of time. Both Janet and Robert testified that they had the expectation that they would receive payment for the services rendered.

In reply, defendant argued that plaintiff's claim for attendant-care benefits was supported only by hearsay and other inadmissible evidence. Defendant argued that the letter from Dr. Pannu was inadmissible hearsay, and that plaintiff could not rely on Dr. Sewick's opinion because he was an expert witness and not a treating physician. Defendant also argued that plaintiff could not rely on Janet's affidavit because it conflicted with her deposition testimony. Furthermore, Janet and Robert had failed to keep track of the assistance they had provided to John.

The trial court denied defendant's motion for partial summary disposition, holding that plaintiff could rely on the expert opinions to avoid summary disposition regarding the need for attendant-care services. The trial court rejected plaintiff's argument that Dr. Pannu's letter was inadmissible hearsay, but also stated that even if it were hearsay, other evidence had established a question of fact regarding John's need for attendant-care services as a result of the accident, including the scope of any attendant-care services and whether the caregivers had any expectation of being compensated for their services.

Defendant argues on appeal that it was entitled to partial summary disposition because there was no evidence that constant attendant care was ordered by a treating doctor, and because plaintiff did not provide reasonable proof of the fact and amount of services provided. We disagree.

Initially, defendant has not provided this Court with any authority in support of its argument that plaintiff could not rely on the opinions of expert witnesses to establish a genuine issue of material fact regarding John's need for around-the-clock attendant-care services. Although defendant emphasizes that John's primary-care physician, Dr. Morelli, did not provide similar testimony regarding John's need for attendant-care services, Dr. Morelli explained at her deposition that she was primarily treating John for other medical conditions unrelated to the accident and she did not know if John needed help with his daily living activities after July 2018. She further explained that other doctors were more qualified to address the injuries that John had received in the accident and whether he had a need for attendant care because of those injuries. Conversely, Dr. Sewick and Dr. Pannu provided their expert opinions regarding John's need for attendant-care services, and explained how John's physical limitations that gave rise to the need for attendant care were related to the injuries he sustained in the accident. Defendant has not established that the trial court erred by considering the testimony of expert witnesses on this issue, especially considering the jury's likely need for such testimony in ultimately deciding the issue of fact. See MRE 702; *Gilbert v Daimler ChryslerCorp*, 470 Mich 749, 791; 685 NW2d 391 (2004).

Defendant also argues that Dr. Pannu's letter should not have been considered by the trial court because it was never provided during discovery and was authored after discovery closed, and that it therefore would not have been admissible at trial. We disagree. The letter was offered as

evidence of Dr. Pannu's expected trial testimony; although that evidence had to be substantively admissible, it did not have to be in admissible form. *Barnard Mfg Co, Inc v Gates Performance Engineering, Inc*, 285 Mich 362, 373; 775 NW2d 618 (2009). Moreover, the trial court in fact admitted Dr. Pannu's letter at trial, and although defendant objected to its admission at trial, defendant has not challenged that admission on appeal. Defendant's argument that the trial court erred by considering this evidence when ruling on the motion for summary disposition because it was not admissible is moot in light of the trial court's actual admission of this evidence. See *Barrow v Detroit Election Comm*, 305 Mich App 649, 659; 854 NW2d 489 (2014).[2]

Defendant also argues that Janet and Robert did not provide reasonable proof regarding the scope of the services provided. However, their deposition testimony and Janet's affidavit, viewed in the light most favorable to the nonmovants, at least raised a genuine issue of material fact regarding whether they had cared for and supervised John continuously since he returned home after the accident. In *Douglas*, 492 Mich at 267-268 n 56, the Supreme Court explained that whether payment for services from the insurer is required depends on the caregiver's expectation to be compensated and if actual services were provided, not whether there was any formal agreement. Testimony from a caregiver is sufficient to support the claim. Although records of the work performed and the dates and times involved is helpful, it is not required. *Id*. at 269-272. The extent of Robert and Janet's work for which defendant was liable was a factual issue for the jury. Accordingly, the trial court did not err by denying defendant's motion for partial summary disposition.

## V. MOTION TO COMPEL

Defendant also argues that the trial court erred by denying in part its pretrial motion to compel production of John's updated medical records after his death, and by denying its request to reopen discovery. We disagree. We review for an abuse of discretion a trial court's decision to grant or deny discovery. *Shinkle v Shinkle*, 255 Mich App 221, 224; 663 NW2d 481 (2003). A court abuses its discretion when it selects an outcome falling outside the range of reasonable and principled outcomes. *Maldonado v Ford Motor Co*, 476 Mich 372, 388; 719 NW2d 809 (2006).

In this case, defendant sought to obtain updated medical records from Dr. Pannu, Dr. Sewick, and Dr. Morelli after John's death. At the hearing on the motion, defendant also requested that discovery be reopened to allow it to obtain and review medical records from additional doctors who had treated John but who had not been deposed. Because discovery had closed, the trial court granted defendant's request limited to updated medical records from Drs. Morelli, Sewick, and Pannu. The trial court appeared to agree with plaintiff that because discovery had closed and because there was no claim that John's death was associated with the automobile accident or

---

[2] Defendant also argues generally that Dr. Sewick's and Dr. Pannu's opinions were inadmissible under MRE 702, and therefore should not have been considered for purposes of defendant's motion for summary disposition. Defendant did not raise this argument before the trial court. Accordingly, this is not a basis for disturbing the trial court's ruling. Nonetheless, because the testimony from both witnesses was admitted at trial and they were qualified as experts, this argument is also moot. *Barrow*, 305 Mich App at 659.

plaintiff's request for PIP benefits, there was no need to allow further discovery related to his death.

The trial court did not err by declining to order plaintiff to produce medical records for other doctors who had treated John. The only medical witnesses called by plaintiff at trial were Dr. Sewick, Dr. Morelli, and Dr. Pannu, although other treating physicians were identified in the final joint pretrial order. Defendant has not identified the doctors from whom it desired medical records. It appears that defendant wanted to review these additional doctors' records to address John's cause of death, which would require reopening discovery. However, as the trial court observed when denying additional discovery as part of its ruling on defendant's original motion, John's cause of death was not an issue in this case; according to Janet, John died from cancer. There was no claim that John's death was related to injuries received in the automobile accident, and plaintiff was not seeking benefits for John's hospice care. Defendant did not demonstrate a need for access to this information to defend this case. As explained in *Nuriel v Young Women's Christian Ass'n of Metro Detroit*, 186 Mich App 141, 146; 463 NW2d 206 (1990), when considering a request for additional discovery, a trial court

> should consider whether the granting of discovery will facilitate or hamper the litigation. Factors such as the timeliness of the request, the duration of the litigation[,] and the possible prejudice to the parties should also be considered.

In this case, the trial court granted defendant's request for updated medical records associated with the medical witnesses who plaintiff called at trial, but ruled that there was no reason to reopen or expand discovery so close to trial. Defendant has not demonstrated that the trial court's decision was outside the range of principled outcomes. *Maldonado*, 476 Mich at 388.[3]

## VI. MOTION IN LIMINE

Defendant argues that the trial court erred by denying its motion in limine to exclude John's video deposition and allowing the deposition to be introduced at trial. We disagree. We review for an abuse of discretion a trial court's decision to grant or deny a motion in limine. *Brownlow v McCall Enterprises, Inc*, 315 Mich App 103, 118; 888 NW2d 295 (2016).

During trial, the jury was shown John's video deposition, which is approximately five minutes long and was taken the day before John's death. Plaintiff, who was bedridden during the deposition, testified that he formerly golfed, had worked for General Motors, and his family had been taking good care of him since the accident. Defense counsel was present at the deposition and did not ask any questions. Before trial, defendant moved to exclude the deposition on the

---

[3] Defendant also argues that the trial court erred by failing to rule on its motion for reconsideration of the trial court's decision not reopen or expand discovery. Because we agree with the trial court's decision, any error by the trial court in failing to respond to defendant's reconsideration motion is harmless. See MCR 2.613(A) ("An error in . . . anything done or omitted by the court . . . is not ground for granting a new trial, for setting aside a verdict, or for vacating, modifying, or otherwise disturbing a judgment or order, unless refusal to take this action appears to the court inconsistent with substantial justice.").

grounds that (1) it was irrelevant to the claims involved in this action, and (2) even if marginally relevant, it should be excluded under MRE 403 because it was more prejudicial than probative. The trial court denied defendant's motion.

Defendant has not demonstrated that the trial court abused its discretion by allowing John's deposition to be played at trial. Although defendant argues that John's testimony was not relevant to his need for attendant care and replacement-service benefits, part of defendant's theory of the case was that John's physical limitations were unrelated to the automobile accident. John's testimony was relevant to show that he had been physically active and independent before the accident, and was probative of whether his physical limitations and dependence on family members after the accident were causally related to the injuries he received in the automobile accident. MRE 401; 402; *In re Brody Conservatorship*, 321 Mich App 332, 348; 909 NW2d 849 (2017).

Further, we are not persuaded that the video recording was unfairly prejudicial because John was bedridden and died shortly afterward. It is apparent from the recording that John was in bed, but the jury was not made aware of the circumstances and timing under which the recording was made. To the extent that the jury could infer that the deposition was recorded shortly before John died, the jury had already been informed during Janet's testimony that John died from cancer unrelated to the accident, so there was little risk that the deposition would cause confusion or mislead the jury in this respect. See MRE 403; *Brody Conservatorship*, 321 Mich App at 348. The deposition's brevity—approximately five minutes—also weighs against a finding that it so prejudiced the entire trial as to require reversal. For these reasons, defendant has not shown that the trial court abused its discretion. *Brownlow*, 315 Mich App at 118.

## VII. JURY INSTRUCTION

Defendant also argues that the trial court erred by giving a nonstandard jury instruction regarding causation and plaintiff's burden of proof with regard to a no-fault claim. We disagree. We review de novo claims of instructional error. *Goodwin v Northwest Mich Fair Ass'n*, 325 Mich App 129, 156; 923 NW2d 894 (2018). A standard jury instruction must be given if it is applicable, accurately states the applicable law, and is requested by a party. MCR 2.512(D)(2). This Court reviews for an abuse of discretion a trial court's determination whether a standard jury instruction is applicable and accurate. *Lewis v LeGrow*, 258 Mich App 175, 211; 670 NW2d 675 (2003). In *Alpha Capital Mgt, Inc v Rentenbach*, 287 Mich App 589, 629; 792 NW2d 344 (2010), this Court explained:

"Generally, a trial court may give an instruction not covered by the standard instructions as long as the instruction accurately states the law and is understandable, concise, conversational, and nonargumentative." *Central Cartage Co v Fewless*, 232 Mich App 517, 528; 591 NW2d 422 (1998); see also MCR 2.516(D)(4). But a trial court need not give a supplemental instruction if doing so would not "enhance the ability of the jury to decide the case intelligently, fairly, and impartially." *Central Cartage*, 232 Mich App at 528. Even if a requested supplemental instruction accurately states the law, a trial court does not abuse its discretion in rejecting it if the supplemental instruction adds nothing to an

-11-

otherwise balanced and fair jury charge.  *Beadle v Allis*, 165 Mich App 516, 527; 418 NW2d 906 (1987).

"Instructional error warrants reversal if the error resulted in such unfair prejudice to the complaining party that the failure to vacate the jury verdict would be inconsistent with substantial justice."  *Goodwin*, 325 Mich App at 157.  "If, on balance, the theories of the parties and the applicable law are adequately and fairly presented to the jury, no error requiring reversal occurs." *Lewis*, 258 Mich App at 211.

At trial, plaintiff asked the trial court to give a jury instruction that modified M Civ JI 35.02 to address defendant's evidence that John's physical conditions and limitations were attributable to causes unrelated to the automobile accident.  Although defendant argued that M Civ JI 35.02 adequately addressed the issue of causation, the trial court agreed that the standard instruction required modification and ultimately agreed to give plaintiff's proposed instruction.

At the time of trial, M Civ JI 35.02 (No-Fault First-Party Benefits Action: Burden of Proof), provided:

> In order for the plaintiff to recover no-fault benefits from the defendant, the plaintiff has the burden of proving:
>
> (a) that at the time of the accident there existed a valid contract of no-fault insurance between [*name of insured*] and defendant
>
> (b) that plaintiff's injuries arose out of the [ownership/or/operation/or/maintenance/or/use] of a motor vehicle as a motor vehicle
>
> (c) that plaintiff incurred allowable expenses which consist of reasonable charges for reasonably necessary products, services and accommodations for the plaintiff's care, recovery or rehabilitation
>
> *   *   *
>
> (e) that plaintiff reasonably incurred replacement service expenses which consist of expenses during the first three years after the accident to obtain ordinary and necessary services in place of those that plaintiff would have performed for [his/her] benefit and the benefit of [his/her] dependents
>
> *   *   *
>
> (j) that the defendant failed to pay any or all of said benefits.

The trial court provided a modified instruction to the jury as follows:

> Jury instruction 3502, no-fault first party benefits action burden of proof. In order for the Plaintiff to recover no-fault benefits from the Defendant, the Plaintiff has the burden of proving that Plaintiff's injuries arose out of the operation

or use of a motor vehicle as a motor vehicle; that the Plaintiff incurred allowable expenses which consists of reasonable charges for reasonably necessary products, services and accommodations for the Plaintiff's care, recovery or rehabilitation; that the Plaintiff reasonably incurred replacement services expenses which consist of expenses during the first three years after the accident to obtain ordinary and necessary services in place of those that Plaintiff would have performed for his benefit and the benefit of his dependents; that the Defendant failed to pay any and—or all of his benefits. To the extent that Plaintiff has met or has not met his burden of proof you may grant, diminish or deny the claimed benefits according to the methods of computation, which I will describe next—or which I will describe. A special causation instruction, in order for Defendant to be liable under the Michigan No-Fault Law for the products, services[, and] accommodations provided to Plaintiff, there must be a sufficient causal connection, between the injuries Plaintiff sustained in the motor vehicle accident and the products, services, accommodations provided to Plaintiff. The injuries Plaintiff sustained in a motor vehicle accident need not be the sole cause of Plaintiff's need for the products, services and accommodations, rather the law in Michigan provides that a sufficient causal connection exists if the injuries sustained by Plaintiff in the motor vehicle accident were among the causes necessitating the products, services and accommodations provided to Plaintiff, even though there may have been other independent causes that contributed to Plaintiff's need for the products, services or accommodations, as long as the connection is more than incidental, fortuitous or but for. Therefore, if you determine that the injuries sustained by Plaintiff in the motor vehicle accident were one of the reasons Plaintiff needed the products, services or accommodations provided to Plaintiff, then a sufficient causal connection has been established under the law to render Defendant liable for those products, services, accommodations. Further, you are instructed that Defendant takes the Plaintiff as he finds him. If you find that Plaintiff was unusually susceptible to injury, that fact will not relieve the Defendant from liability for any and all benefits that arise out of the subject motor vehicle accident.

The trial court did not reversibly err by giving the modified instruction to explain how the jury should determine whether John's injuries arose out of the motor vehicle accident, when defendant offered evidence of other possible reasons, including later-developed health problems, for John's inability to function independently and his need for attendant care and replacement services. See, e.g., *Morales v State Farm Mut Auto Ins Co*, 279 Mich App 720; 761 NW2d 454 (2008). On balance, the parties' theories and the applicable law were adequately and fairly presented to the jury and we find no error requiring reversal, *Lewis*, 258 Mich App at 211, and in any event any error was harmless.

Affirmed.

/s/ Mark T. Boonstra
/s/ Anica Letica
/s/ Kathleen A. Feeney

-13-